IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Westley Nat Lewis, | ) | No. CV 11-70-TUC-JGZ (HCE) |
| Petitioner, | ) | **REPORT & RECOMMENDATION** |
| vs. | ) | |
| Charles L. Ryan; et. al., | ) | |
| Respondents. | ) | |

Pending before the Court is Petitioner's *pro se* Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2254 (Doc. 5). Respondents have filed an Answer (Doc. 10). Petitioner did not file a Reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for Report and Recommendation. For the following reasons the Magistrate Judge recommends that the District Court dismiss and deny the Amended Petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Petitioner's Conviction

In 2005, a grand jury sitting in Pima County Superior Court, Tucson, Arizona, indicted Petitioner on charges of second-degree burglary and theft by control. (Answer, Exh. A, p.1; Answer Exh. B, p.1). The Arizona Court of Appeals summarized the facts as

follows:

> As [Petitioner] states in his opening brief, "Forensic evidence–three partial fingerprints and a DNA match indicated...that [Petitioner] had been in contact with objects inside a Tucson apartment in March 2005 while the occupants were away." But, in addition, the victim testified that her bedroom had been ransacked by someone who had obviously been "going through [her] stuff" after having gained entry by breaking the bedroom window with a rock.

> Among the items the burglar had disturbed was a piggy bank that the victim kept on her desk. After the burglary, the piggy bank was found lying on the floor of the victim's bedroom, missing the thirty to fifty dollars it had previously contained. Three fingerprints found on the piggy bank proved to be [Petitioner's].

(Answer, Exh. A, p.5 (footnote omitted)).

A jury found Petitioner guilty of the burglary charge but acquitted him of theft. (*Id.* at p.1). After the trial court found Petitioner had three historical prior felony convictions and had committed the burglary offense while on probation, Petitioner was sentenced to an enhanced, presumptive prison term of 11.25 years. (*Id.* at p.2).

B.     Direct Appeal

Petitioner filed a direct appeal wherein he argued that the trial court erred in refusing his proffered jury instruction on first-degree criminal trespass, which he claimed was a lesser-included offense of second-degree burglary. (Answer, Exh. B). In affirming Petitioner's conviction and sentence, the appellate court relied on Arizona precedent that "'[c]riminal trespass is not necessarily a lesser included offense of burglary....'" Answer, Exh. A, p. 4 (*quoting State v. Malloy,* 131 Ariz. 125, 131, 639 P.2d 315, 321 (1981)). The court also found that the proffered instruction was not supported by the evidence because "all the elements of the charged offense were established by the evidence presented." (*Id.* at ¶11).

Thereafter, Petitioner raised the same claim in his Petition for Review to the Arizona Supreme Court. (Answer, Exh. C). The court denied review on March 18, 2008. (Answer, Exh. D).

C.     Petition for Post-Conviction Relief

On April 7, 2008, Petitioner filed a Notice of Post-Conviction Relief. (Answer, Exh. I). Thereafter, through counsel, Petitioner filed a Post-Conviction Relief (hereinafter "PCR")

Petition pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Answer, Exh. E). Petitioner, citing the Sixth Amendment right to counsel, argued that trial counsel was ineffective for failing to file a post-trial motion for dismissal on the ground that the evidence was insufficient to support conviction. (*Id.*). The trial court denied relief without a hearing. (Answer, Exh. F). Petitioner filed a petition for appellate court review raising the same issue. (Answer, Exh. G). The appellate court granted review, but denied relief. (Answer, Exh. H). Although Petitioner received an extension of time to file a petition for review with the Arizona Supreme Court, he did not seek such review. (Answer, Exh. J, K; Petition, p.5). On January 20, 2010, the mandate issued. (Answer, Exh. K).

### D.    Amended Federal Habeas Petition

On January 26, 2011, the Clerk of Court file-stamped Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. (Doc. 1). The Petition was signed by Petitioner and placed in the prison mailing system on January 20, 2011. (*Id.*). A federal habeas petition is deemed filed when handed by the inmate to a prison official for mailing. *See Houston v. Lack,* 487 U.S. 266, 270-271 (1988); *Patterson v. Stewart,* 251 F.3d 1243, 1245 n.2 (9th Cir. 2001) ("Under the prison mailbox rule...a *pro se* petitioner's petition is deemed constructively filed at the moment it is delivered to prison officials to be forwarded to the court clerk."). On February 9, 2011, the Court dismissed Petitioner's Petition for failure to name his custodian as a respondent and for failure to allege in each count the federal constitutional right that he claims was violated. (Doc. 4). The Court granted Petitioner leave to file an Amended Petition. (*Id.*). On March 3, 2011, the Court file-stamped Petitioner's Amended Petition, which he signed and placed in the prison mailing system on March 1, 2011. (Doc. 5).

In his Amended Petition, Petitioner raises the following grounds for relief:

1.    The trial court violated Petitioner's Fifth Amendment right to due process when it denied his request for a jury instruction on criminal trespass as a lesser-included offense (Ground I);

2.    Petitioner's Sixth Amendment right was violated because trial counsel was

- 3 -

1            ineffective for failing to file a post-trial motion for dismissal based on lack of

2            evidence (Ground II); and

3        3.       Petitioner was denied his constitutional rights under the Fourteenth and Sixth

4            Amendments with regard to his right to a fair trial, the presumption of

5            innocence, and to be represented effectively.

6  (Petition, pp. 6-7).

7        Respondents contend that Petitioner's Amended Petition is untimely filed. (Answer,

8  pp. 4-7). Alternatively, Respondents contend that Petitioner's Grounds I and III are

9  procedurally defaulted and Ground II lacks merit. (*Id.* at pp. 7-19).

10  **II.    DISCUSSION**

11        A.    Statute of Limitations

12        The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA")

13  applies to federal habeas petitions, like Petitioner's, that are filed after April 24, 1996. *See*

14  *Lindh v. Murphy,* 521 U.S. 320, 327 (1997). The AEDPA "imposes a one-year statute of

15  limitations on habeas corpus petitions filed by state prisoners in federal court." *Patterson,*

16  251 F.3d at 1245 (*citing* 28 U.S.C. § 2244(d)(1)). Pursuant to section 2244, the limitations

17  period:

18        shall run from the latest of–
19                (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
20                (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws
21                of the United States is removed, if the applicant was prevented from filing by such State action;
22                (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been
23                newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
24                (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the
25                exercise of due diligence.

26  28 U.S.C. § 2244(d)(1)(A)-(D).

27        Additionally, the AEDPA limitations period is statutorily tolled when a "properly filed

28  application for State post-conviction or other collateral review with respect to the pertinent

1    judgment or claim is pending...." 28 U.S.C. § 2244(d)(2).  Moreover, the AEDPA limitations

2    period may also be subject to equitable tolling. *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008,

3    1011 n. 2 (9th Cir. 2009).

4             Respondents concede that Petitioner's "Amended Petition relates back to the original

5    filing date of January 20, 2011, for time calculation purposes."  (Answer, p. 4 (*citing*

6    Fed.R.Civ.P. 15(c)(2)).  Respondents recognize that Petitioner filed the instant action "on the

7    one-year anniversary of the entry of the Arizona Court of Appeals' mandate in his

8    [PCR]...proceedings...."  (Answer, p. 6).  Respondents argue that "Petitioner's conviction

9    became final on October 8, 2009, the date of the state appellate court decision denying

10   collateral review", and not the later date of January 20, 2010 when the mandate issued in

11   that proceeding.  (*Id.* at p.5).

12            Under the AEDPA, in pertinent part, the limitations period commences, on "[t]he date

13   on which the judgment became final by the conclusion of direct review or the expiration of

14   the time for seeking such review[.]" 28 U.S.C. §2244(d)(1)(A).  The period for direct review

15   includes the 90-day period during which a petitioner can file a petition for writ of *certiorari*

16   to the United States Supreme Court.  *Bowen v. Row,* 188 F.3d 1157, 1159 (9th Cir. 1999).

17   Respondents acknowledge that "[b]efore the 90-day period for seeking *certiorari* expired,

18   Petitioner initiated [PCR]...proceedings by filing his notice of post-conviction [relief] on

19   April 7, 2008."  (Answer, p. 5).  Thus, at the end of the 90-day period for seeking *certiorari*,

20   Petitioner's conviction became *final*.  *See Bowen,* 188 F.3d at 1159.  However, because

21   Petitioner had filed his PCR Petition by that time, the limitations period was immediately

22   tolled under 28 U.S.C. § 2244(d)(2).

23            Respondents correctly point out that the 90-day period for filing a petition for writ of

24   *certiorari* to the United States Supreme Court is not added to the time collateral review

25   proceedings are pending in state court.  *Lawrence v. Florida,* 549 U.S. 327, 332 (2007).

26   Respondents argue that "Petitioner's filing his federal petition on the one-year anniversary

27   of the entry of the Arizona Court of Appeals' mandate in his [PCR]...proceedings does not

28   comport with the AEDPA's statute of limitations."  (Answer, p.6).   According to

1    Respondents, the statute of limitations expired in either: October 2010, one year after the

2    Arizona Court of Appeals issued its decision denying PCR relief; or in December 2010, one

3    year from the date Petitioner's petition for review to the Arizona Supreme Court in was due

4    in the post-conviction relief proceeding. (*Id.*, at p.5).   Respondents contend that in either

5    event, Petitioner's "January 20, 2011 petition is still untimely."  (*Id.*).

6         Until an application for state post-conviction relief has achieved final resolution

7    through the State's post-conviction procedure, it remains "pending" for purposes of the

8    tolling provision at section 2244(d)(2).  *Carey v. Saffold,* 536 U.S. 214, 219-220 (2002);

9    *Hemmerle v. Schriro,* 495 F.3d 1069, 1077 (9th Cir. 2007).  The United States Supreme Court

10   has stated:

11        Read naturally, the text of the statute must mean that the statute of limitations
          is tolled only while state courts review the application. As we stated in *Carey*
12        *v. Saffold*, 536 U.S. [at] 220,... (internal quotation marks omitted), a state
          postconviction application "remains pending" "until the application has
13        achieved final resolution through the State's postconviction procedures."
          ...State review ends when the state courts have finally resolved an application
14        for state postconviction relief. After the State's highest court has *issued its*
          *mandate or denied review*, no other state avenues for relief remain open. And
15        an application for state postconviction review no longer exists.

16   *Lawrence,* 549 U.S. at 332 (emphasis added).  "In Arizona, when the court of appeals grants

17   review of a petition, but denies the petition, [as in the instant case,] direct review is not final

18   until the mandate has issued."  *Ramon v. Ryan,* 2010 WL 3564819, *6 (D. Ariz. July 23,

19   2010) (*citing* Ariz.R.Crim.P. 31.23(a)[1]).  *See also Celaya v. Stewart,* 691 F.Supp.2d 1046,

20   1055, 1074-1075, (D.Ariz. 2010).  Respondents' argument to the contrary, which relies

21   primarily on the Ninth Circuit's decision in *Hemmerle,* is misplaced given that *Hemmerle* did

22   not involve a situation where the appellate court granted review but denied relief in the post-

23   conviction proceeding.  Moreover, *Hemmerle,* in pertinent part, addressed whether a letter

---

[1]Under Ariz.R.Crim.P. 31.23(a),

[i]f there has been no motion for reconsideration and no petition for review
filed, the clerk of the Court of Appeals *shall issue the mandate at the*
*expiration of time for the filing of such motion or petition.*"
(emphasis added).

issued from the clerk of the court of appeals facilitating the performance of the ministerial function of returning the record to the trial court after the Arizona Supreme Court's denial of review factored into the tolling period under section 2244(d)(2). *Hemmerle,* 495 F.3d at 1077. In deciding that the post-conviction proceeding was not pending for purposes of AEDPA's tolling provision when the letter issued, the *Hemmerle* court pointed out that the letter was not a mandate, nor was it the equivalent to the issuance of a mandate. *Id.* Herein, unlike *Hemmerle*, review was granted by the appellate court and a mandate in fact issued. On the instant facts, the AEDPA statute of limitations was tolled until January 20, 2010 when the mandate issued in the post-conviction relief proceedings. *See Lawrence,* 549 U.S. at 332; *Ramon,* 2010 WL 3564819, at *6; *Celaya,* 691 F.Supp.2d at 1055, 1074-1075. Petitioner had one year from that date to file his federal habeas petition. *See* 28 U.S.C. § 2244. As Respondents acknowledge, Petitioner's Amended Petition relates back to January 20, 2011, the date he filed his original petition. Petitioner's Amended Petition is timely filed under the AEDPA.

B.    Whether Grounds I and III are Procedurally Defaulted

Respondents argue that Petitioner's Ground I and III are procedurally defaulted and, thus, precluded from federal habeas review.

1.    Standard

a.    Exhaustion

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him  28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989). The exhaustion inquiry focuses on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court. *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999). Exhaustion generally requires that a prisoner provide the state courts an opportunity to act on his claims before he presents those claims to a federal court. *Id.* A petitioner has not exhausted a claim for relief so long as the petitioner has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

1    To meet the exhaustion requirement, the petitioner must have "'fairly present[ed]' his

2    claim in each appropriate state court...thereby alerting that court to the federal nature of the

3    claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995).

4    A petitioner fairly presents a claim to the state court by describing the factual or legal bases

5    for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting

6    claims under the United States Constitution." *Duncan,* 513 U.S. at 365-66. *See also Tamalini*

7    *v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (same). Mere similarity between a claim raised

8    in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at

9    365-66.

10    Furthermore, to fairly present a claim, the petitioner "must give the state courts one

11    full opportunity to resolve any constitutional issues by invoking one complete round of the

12    State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once a federal

13    claim has been fairly presented to the state courts, the exhaustion requirement is satisfied.

14    *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas petitions, other than those

15    concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted

16    if they have been fairly presented to the Arizona Court of Appeals either on appeal of the

17    conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of

18    Criminal Procedure. *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999), *cert. denied*

19    529 U.S. 1124 (2000). Thus, "[a] petitioner fairly and fully presents a claim to the state court

20    for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the

21    proper forum..., (2) through the proper vehicle..., and (3) by providing the proper factual and

22    legal basis for the claim...." *Insyxiengmay v. Morgan,* 403 F.3d 657, 668 (9th Cir. 2005)

23    (citations omitted).

24                              b.    Procedural Default

25    In some instances, a claim can be technically exhausted even though the state court

26    did not address the merits. This situation is referred to as "procedural bar" or "procedural

27    default." *See Coleman v. Thompson,* 501 U.S. 722, 732 ("A habeas petitioner who has

28    defaulted his federal claims in state court meets the technical requirements for exhaustion;

there are no state remedies any longer 'available' to him."). A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons such as waiver or preclusion. *Ylst v. Nunnemaker,* 501 U.S. 797, 802-05 (1991); *Franklin v. Johnson,* 290 F.3d 1223, 1230 (9th Cir. 2002). A higher court's subsequent summary denial reaffirms the lower court's application of a procedural bar. *Ylst,* 501 U.S. at 803.

Additionally, procedural default also occurs if the claim was not presented to the state court and it is clear the state court would now refuse to address the merits of the claim for procedural reasons. *Id.* Thus, if a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[2] *See Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred, *inter alia,* on any claim which could have been raised on direct appeal or could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[3] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2. Moreover, a state

---

[2]The Ninth Circuit has suggested that, under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver. *See Cassett v. Stewart*, 406 F.3d 614 (9th Cir. 2005), *cert. denied,* 546 U.S. 1172 (2006). The issue of waiver must be affirmatively raised by the petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

[3]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (*citing* Ariz.R.Crim.P. 32.1(d)-(h)).

post-conviction action is futile when it is time-barred. *Beaty,* 303 F.3d at 987; *Moreno v. Gonzalez,* 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz.R.Crim.P. 32.4(a) as a basis for dismissal of Arizona petition for post-conviction relief, distinct from preclusion under Ariz.R.Crim.P. 32.2(a)).

Both of these instances of procedural default provide an independent and adequate state-law ground for the conviction and sentence and thus prevents federal habeas corpus review. Accordingly, the procedural default doctrine prevents state prisoners from obtaining federal review by allowing the time to run on available state remedies and then rushing to federal court seeking review. *Coleman,* 501 U.S. at 731-732.

A federal court may not consider a claim that is procedurally defaulted unless the petitioner demonstrates cause and prejudice to excuse the default, or demonstrates a fundamental miscarriage of justice would result. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495 (1986); *Coleman,* 501 U.S. at 750; *Cook v. Schriro,* 538 F.3d 1000, 1028 (9th Cir. 2008) (*citing Schlup v. Delo,* 513 U.S. 298, 321 (1995); *Franklin,* 290 F.3d at 1231. Generally, "cause" sufficient "to excuse a default exists if the petitioner 'can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Cook,* 538 F.3d at 1027 (*quoting Murray,* 477 U.S. at 488). Prejudice is defined as actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must demonstrate that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original). If the petitioner fails to establish cause sufficient to excuse a procedural default, the court "need not consider whether he suffered actual prejudice." *Cook,* 538 F.3d at 1028 n.13.

To fall within the narrow class of cases that implicates a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence" which "can be shown when a petitioner presents evidence of innocence so strong that a court cannot

1   have confidence in the outcome of the trial unless the court is also satisfied that the trial was

2   free of nonharmless constitutional error." *Sistrunk v. Armenakis,* 292 F.3d 669, 672-73 (9th

3   Cir. 2002) (internal quotation marks and citations omitted).  *See also Schlup,* 513 U.S. at 316.

4   The Supreme Court has stated that "actual innocence means factual innocence, not mere legal

5   insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). "'To be credible,...a

6   claim [of actual innocence] requires petitioner to support his allegations of constitutional

7   error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy

8   eye-witness accounts, or critical physical evidence–that was not presented at trial.'" *Cook,*

9   538 F.3d at 1028 (*quoting Schlup,* 513 U.S. at 324).

10                              c.      Conclusion

11       In summary, failure to exhaust and procedural default/bar are different concepts.

12   *Franklin,* 290 F.3d at 1230-1231.  Under both doctrines, the federal court may be required

13   to refuse to hear a habeas claim. *Id.*  The difference between the two is that when a petitioner

14   fails to exhaust, he may still be able to return to state court to present his claims there. *Id.*

15   In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show

16   cause and prejudice for the default [or a fundamental miscarriage of justice]...the district

17   court dismisses the petition because the petitioner has no further recourse in state court." *Id.*

18   at 1231.

19                       2.      Ground I

20       In Ground I of the Amended Petition, Petitioner claims that he was deprived of his

21   Fifth Amendment right to due process when the trial court denied his request for a jury

22   instruction on criminal trespass, which Petitioner argues is a lesser-included offense of

23   second degree burglary, the charged offense.  (Amended Petition, p. 6).  Respondents

24   contend that Petitioner did not cite a federal basis when he raised the issue of the jury

25   instruction on direct appeal.  (Answer, p. 11).  Respondents also contend that defining

26   criminal conduct is a matter of state law and is not a matter appropriate for federal habeas

27   review.  (*Id.*).

28       It is the Fourteenth Amendment, not the Fifth Amendment that protects a person

- 11 -

1    against deprivations of due process by a state.  *See* U.S. Const. amend XIV, §1 ("nor shall

2    any state deprive any person of life, liberty, or property without due process of law.");

3    *Castillo v. McFadden,* 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment

4    prohibits the federal government from depriving persons of due process, while the Fourteenth

5    Amendment explicitly prohibits deprivations without due process by the several States.").

6    Because the Fifth Amendment Due Process Clause does not provide a cognizable ground for

7    relief regarding Petitioner's state court conviction, his allegations under the Fifth

8    Amendment Due Process Clause should be dismissed.

9         Moreover, even had Petitioner alleged a Fourteenth Amendment due process

10   violation, Respondents are correct that he failed to fairly present such a claim to the state

11   court.

12        To exhaust a federal claim, a petitioner must fairly present the claim in state court.

13   *Fields v. Waddington,* 401 F.3d 1018, 1020 (9th Cir. 2005).  A petitioner fairly presents his

14   claims to the state court "only if he alerted the state court that his claim[] rested on the

15   federal Constitution....In order to alert the state court, a petitioner must make reference to

16   provisions of the federal Constitution or must cite either federal or state case law that engages

17   in a federal constitutional analysis."  *Id.* at 1020-1021 (citations omitted); *see also Castillo,*

18   399 at 999 ("In short, the petitioner must have either referenced specific provisions of the

19   federal constitution or cited to federal or state cases involving the legal standard for a federal

20   constitutional violation.").  Further, it is not "enough to raise a state claim that is analogous

21   or closely similar to a federal claim."  *Castillo,* 399 F.3d at 999.  Thus, where a petitioner

22   raises an issue of exclusively state law to the state court and fails to apprise the state court

23   that he is also raising a federal claim, he has failed to fairly present his federal claim.  *See Id.*

24   at 1002.  Moreover, "[w]hen a petitioner does not label his claim as federal, the mere citation

25   to a state court case that engages in both state and federal constitutional analysis does not

26   suffice to exhaust the federal claim."  *Fields,* 401 F.3d at 1022 (*citing Casey v. Moor*e, 386

27   F.3d 896, 912 n.13 (9th Cir. 2004)).

28        Petitioner argued on direct appeal that the trial court erred as a matter of law by

refusing his request for a jury instruction on criminal trespass. (Answer, Exh. B, pp. 9-15). Petitioner's argument on direct appeal addressed whether, under Arizona law, criminal trespass is a lesser-included offense of second-degree burglary. (*Id.*). Review of the cases cited by Petitioner on direct appeal reflect that Petitioner cited no federal cases and he made no mention of the federal constitution or the issue of a federal due process violation. Of the cases Petitioner cited, only two, *State v. Anderson,* 210 Ariz. 327, 111 P.3d 369 (2005), and *State v. Hughes,* 635 N.W.2d 661 (Wis.App. 2001), mentioned a due process violation associated with denial of a lesser-included instruction. In *Anderson,* the Arizona court addressed and rejected the argument that the trial court's denial of an aggravated assault instruction in a capital case violated the defendant's due process rights under *Beck v. Alabama,* 447 U.S. 625 (1980).[4] *Anderson,* 210 Ariz. at 344, ¶¶63-65, 111 P.3d at 386. Petitioner cited *Anderson* in the portion of his brief labeled "Standard of Review" and he relied on the case solely for the premise that "[a] trial court's denial of a requested jury instruction either is reviewed for an abuse of discretion, *State v. Anderson,* 210 Ariz. 327, 343, ¶ 60, 111 P.3d 369, 385 (2005), or for fundamental error, *State v. Miranda,* 200 Ariz. 67, 68, ¶2, 22 P.3d 506, 507 (2001)." (Answer, Exh. B, p. 9). Petitioner cited *Hughes* to support his argument that the charge of criminal trespass is a lesser included offense of second-degree burglary. (*Id.* at p. 14 (*citing Hughes,* 635 N.W.2d at 666)).[5] Elsewhere in

---

[4]"*Beck* held unconstitutional an Alabama statute that prohibited a trial court from instructing the jury on any lesser included offense in a capital murder prosecution. The Supreme Court found that such a restriction might lead a jury to convict a defendant of capital murder, despite jurors' reasonable doubts, merely because the jurors thought the defendant was guilty of some crime and should therefore be punished. [*Beck*, 447 U.S.]...at 642–43...." *Anderson,* 210 Ariz. at 343, ¶63, 111 P.3d at 386.

[5]*Hughes* includes the following citation: "*See State v. Engram*, 171 Ariz. 363, 831 P.2d 362, 363-365 (Ct.App.1991) (affirming trial court's entry of judgment of conviction on the greater charge (second-degree burglary) when jury returned 'guilty' verdicts on both the greater charge and its lesser-included offense (criminal trespass)) (collecting cases) (suggesting that error should have been pointed out to jury, which should have then been

1    the *Hughes* decision, the court mentioned the defendant's claim that the trial court

2    disregarded the jury's verdict in violation of his constitutional rights. *Hughes*, 635 N.W.2d

3    at 664. The court rejected the claim without engaging in a federal constitutional analysis

4    because the defendant failed to explain how the jury's verdict violated any of his

5    constitutional rights. *Id.*

6         Likewise, review of Petitioner's Petition of Review to the Arizona Supreme Court in

7    the direct appeal proceeding reflects that Petitioner cited no federal cases and he made no

8    mention of a federal due process violation. (Answer, Exh. C). Of the state cases cited in his

9    Petition for Review, only two mention the federal constitution. Petitioner cited *State v. Rood,*

10   11 Ariz. App. 102, 104-105, 462 P.2d 399, 401-402 (App. 1969) in a footnote regarding the

11   intent element of burglary. (*Id.* at p. 4 n. 3). *Rood* mentions, without discussion, that the

12   defendant, in addition to other claims, also raised federal equal protection and due process

13   claims regarding the failure to provide counsel at a preliminary hearing. *Rood*, 11 Ariz. App.

14   at 103, 462 P.2d at 400. Petitioner quoted *State v. Moody,* 208 Ariz. 424, 466, ¶189, 94 P.3d

15   1119, 1161 (2004) in his "Standards of Review" section as follows: "'[W]e review de novo

16   a claim that a jury instruction misstates the law.'" (Answer, Exh. C, p. 5). *Moody*, a capital

17   case, involved a plethora of federal constitutional claims including due process claims.

18   However, none of those claims involved the issue of lesser-included offenses or are

19   otherwise remotely relevant to Petitioner's argument on direct appeal.[6]

20        "For a federal issue to be presented by the citation of a state decision dealing with

21   both state and federal issues relevant to the claim, the citation must be accompanied by some

22   _____

23   permitted to deliberate further)...." *Hughes*, 635 N.W.2d at 666.

24        [6]With specific regard to jury instructions, Moody argued that: (1) the court improperly
25   instructed the jury on the effect of intoxication which he claimed resulted in a violation of
     the federal *ex post facto* clause; and (2) the trial court's failure to instruct the jury on the
26   consequences of a verdict of not guilty by reason of insanity violated his right to federal due
     process. Moody also raised federal constitutional issues regarding the right to counsel,
27   double jeopardy, violation of due process with regard to the presentation of false evidence,
28   failure to properly *voir dire* the jury, and a range of sentencing issues.

- 14 -

1   clear indication that the case involves federal issues.  Where...the citation to the state case

2   has no signal in the text of the brief that the petitioner raises federal claims or relies on state

3   law cases that resolve federal issues, the federal claim is not fairly presented." *Casey*, 386

4   F.3d at 912 n.13 (holding that in such situation, the petitioner failed to fairly present federal

5   claim).  To any extent that the *Anderson* court's due process discussion in context of the *Beck*

6   decision may be relevant to Petitioner's appeal, the record is clear that Petitioner did not cite

7   *Anderson* for that premise.  (*See* Answer, Exh. B, p. 9 (citing *Anderson* for purpose of

8   standard or review)).  Further, *Hughes* did not engage in a constitutional analysis, and

9   Petitioner cited to *Hughes* not on constitutional law issues, but to support his theory that

10  under state law, criminal trespass constituted a lesser-included offense of second-degree

11  burglary.  Here, Petitioner gave no signal that he relied on *Anderson* or *Hughes* to either raise

12  or resolve a federal issue. Finally, neither *Rood* nor *Moody* engaged a constitutional analysis

13  relevant to Petitioner's claim and he did not rely on those cases to support any federal

14  constitutional argument.  Under the instant circumstances, Petitioner failed to fairly present

15  a federal due process claim to the state court.  *See Casey,* 386 F.3d at 912 n.13.

16              3.    Ground III

17      In Ground III, Petitioner claims that his rights under the Fourteenth and Sixth

18  Amendments were violated. (Petition, p. 8).  Petitioner asserts that the he "had a right to a

19  fair trial and presumed [sic] innocent in every phase of the case...I should have had [sic]

20  opportunity of the lesser crime and the right to be represented correctly." (*Id.*).  Respondents

21  argue that Ground III was not exhausted.  (Answer, p.12).

22      Respondents are correct, as discussed, *supra,* at II.B.2., Petitioner never raised a

23  federal due process issue with regard to the trial court's rejection of the lesser-included

24  offense instruction.  Nor did he argue that the trial court proceedings violated his federal

25  constitutional right to be presumed innocent.  Petitioner has exhausted his Ground II claim

26  of ineffective assistance of counsel with regard to counsel's failure to file a post-trial motion

27  arguing lack of sufficient evidence to convict Petitioner of second-degree burglary.  In

28  Ground III, Petitioner states that he "had the right to be represented correctly." (Petition, p.

8).  In Ground III, Petitioner provides no factual basis to support an ineffective assistance of counsel claim.  It is well settled that "[c]onclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland v. Washington*, 466 U.S. 668, 690 (1984) (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").  Further, Petitioner's exhaustion of the ineffective assistance of council claim raised in Ground II does not exhaust other, unrelated claims of ineffective assistant of counsel.  *See Moormann v. Schriro*, 426 F.3d 1044, 1056-57 (9th Cir. 2005) (new allegations of ineffective assistance of counsel not previously raised before the state court cannot be addressed on habeas review); *Date v. Schriro,* 619 F.Supp.2d 736, 788 (D.Ariz. 2008) (same).

### 4.   Petitioner's Ground I and Ground III are Procedurally Defaulted

Petitioner's return to state court to raise Grounds I and III would be futile given that the claims are precluded as waived under Ariz.R.Crim.P. 32.2(a)(3) because they were not presented on direct appeal or in Petitioner's PCR Petition.  Further, presentation of such claims in a second post-conviction relief proceeding would be untimely under Ariz.R.Crim.P. 32.4.  *See Beaty,* 303 F.3d at 987 (a state post-conviction action is futile when it is time-barred).  Nor do the claims qualify for any of the timeliness exceptions.  *See* Ariz.R.Crim.P. 32.1(d)-(h).  Thus, any additional petition would be subject to summary dismissal.  *See State v. Rosario,* 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones,* 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzalez,* 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion).  Under such circumstances, the claims raised in Grounds I and III are procedurally defaulted.[7]  *Park v. California,* 202 F.3d

---

[7]Because this claim is procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claims are of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claims are precluded pursuant to *Cassett*. Moreover, the procedural timeliness bar of Rule

1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where petitioner has not raised his claim in the state courts and the time for doing so has expired). Petitioner has not demonstrated cause and prejudice to excuse his procedural default. Nor has Petitioner presented any evidence that would sustain application of the "fundamental miscarriage of justice exception" to the procedural default rule on this issue.

C.      Review of the Merits of Ground II

Petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated when his trial counsel failed to file a post-trial motion based on lack of sufficient evidence to convict Petitioner of second-degree burglary in light of the jury's acquittal on the theft charge. (Petition, p. 7).

1.      Standard

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). Therefore, the

---

32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir.2004); see e.g., *Rosario*, 195 Ariz. 264, 987 P.2d 226 (where petitioner did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno*, 192 Ariz. 131, 962 P.2d 205 (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *Jones*, 182 Ariz. at 434, 897 P.2d at 736 (Rule 32.4(a) was amended "to address potential abuse by defendants caused by the old rule's unlimited filing periods"); *see also Wagner v. Stewart,* 2008 WL 169639, *9 (D.Ariz. Jan. 16, 2008).

1   question whether a state court erred in applying the law is a different question from whether

2   it erred in determining the facts. *Rice v. Collins* 546 U.S. 333 (2006).

3        Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the

4   "unreasonable application" test. *See Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003).

5   Under the first test, the state court's "decision is contrary to clearly established federal law

6   if it fails to apply the correct controlling authority, or if it applies the controlling authority

7   to a case involving facts materially indistinguishable from those in a controlling case, but

8   nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.

9   2003)(*citing Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)). Additionally, a state court's

10  decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

11  contradicts the governing law set forth in' Supreme Court cases."[8] *Van Lynn v. Farmon*, 347

12  F.3d 735, 738 (9th Cir. 2003) (*quoting Early v. Packer*, 537 U.S. 3, 8 (2002)). "Whether a

13  state court's interpretation of federal law is *contrary* to Supreme Court authority...is a

14  question of federal law as to which [the federal courts]...owe no deference to the state

15  courts." *Cordova*, 346 F.3d at 929 (emphasis in original)(distinguishing deference owed

16  under the "contrary to" test of section (d)(1) with that owed under the "unreasonable

17  application" test).

18       Under the second test, "'[a] state court's decision involves an unreasonable

19  application of federal law if the state court identifies the correct governing legal

20  principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van

21  Lynn*, 347 F.3d at 738 (*quoting Clark*, 331 F.3d at 1067). Under the "unreasonable

22  application clause...a federal habeas court may not issue the writ simply because that court

23

24       [8]"[T]he *only* definitive source of clearly established federal law under AEDPA is the
25  holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court
    decision. *Williams*, 529 U.S. at 412...While circuit law may be 'persuasive authority' for
26  purposes of determining whether a state court decision is an unreasonable application of
    Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999), only the
27  Supreme Court's holdings are binding on the state courts and only those holdings need be
28  reasonably applied." *Clark*, 331 F.3d at 1069 (emphasis in original).

1    concludes in its independent judgment that the relevant state-court decision applied clearly

2    established federal law erroneously or incorrectly....Rather that application must be

3    objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyear v. Andrade*, 538 U.S.

4    63 (2003)). When evaluating whether the state decision amounts to an unreasonable

5    application of federal law, "[f]ederal courts owe substantial deference to state court

6    interpretations of federal law...." *Cordova*, 346 F.3d at 929.[9]

7          Further, a federal habeas court can only look to the record before the state court in

8    reviewing a state court decision under section 2254(d)(1). *Cullen,* __ U.S. at __, 131 S.Ct.

9    at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas

10   petitioner must overcome the limitation of §2254(d)(1) on the record that was before that

11   state court.")(footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004)("[W]e have

12   made clear that whether a state court's decision was unreasonable must be assessed in light

13   of the record the court had before it.")(citations omitted).

14         Under section 2254(d)(2), which involves purely factual questions resolved by the

15   state court, "the question on review is whether an appellate panel, applying the normal

16   standards of appellate review, could reasonably conclude that the finding is supported by the

17   record." *Lambert*, 393 F.3d at 978: *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.),

18   *cert. denied* 543 U.S. 1038 (2004)("a federal court may not second-guess a state court's fact-

19   finding process unless, after review of the state-court record, it determines that the state court

20   was not merely wrong, but actually unreasonable."). Section (d)(2) "applies most readily to

21   situations where petitioner challenges the state court's findings based entirely on the state

22   record. Such a challenge may be based on the claim that the finding is unsupported by

23   sufficient evidence,...that the process employed by the state court is defective...or that no

24

25         [9]Section 2254(d) applies even where there has been a summary denial. *Cullen v.*

26   *Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1402 (2011). In such circumstances, the petitioner
     can satisfy the "unreasonable application" prong of section 2254(d)(1) "only by showing that

27   'there was no reasonable basis' for the..." state court's decision. *Id.* (*quoting Harrington v.*

28   *Richter,* 562 U.S. __, 131 S.Ct. 770, 784 (2011)).

finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citation omitted). In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues...[M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*. 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000)(emphasis in original).

Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court."[10] *Taylor*, 366 F.3d at 1000: *see also* 28 U.S.C. §2254(c). Factual and credibility determinations by either state trial or appellate courts are imbued with a presumption of correctness. 28 U.S.C. §2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002); *Bragg v. Galaza*, 242 F.3d 1082, 1078 (9th Cir. 2001), *amended* 253 F.3d 1150 (9th Cir. 2001). Furthermore, factual assertions made in support of properly exhausted claims in state court cannot be altered or expanded upon without permission of the federal habeas court. *See Baja v. Ducharme*, 187 F.3d 1075, 1079 (9th Cir. 1999).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under section 2254(d)(1), but its underlying factual

---

[10]Under the AEDPA "a determination of a factual issue made by a State court shall be presumed to be correct" and the presumption of correctness may be overcome only by clear and convincing evidence. 28 U.S.C. §2254(e)(1).  The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once..." it is found that the state court reasonably determined the facts in light of the evidence presented in the state proceeding. *Taylor*, 366 F.3d at 1000.

1    findings supporting that conclusion are clothed with all of the deferential protection

2    ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1)." *Lambert*, 393 F.3d at

3    978.

4                        2.      The State Court Proceedings

5          Petitioner raised his Ground III claim in his PCR Petition.  (Answer, Exh. E).   In

6    ruling on Petitioner's PCR Petition, the trial court cited *Strickland v. Washington,* 466 U.S.

7    668 (1994), in addition to state cases, for the standard of review for resolving claims of

8    ineffective assistance of counsel.  (Answer, Exh. F, pp. 2-3).  The trial court denied

9    Petitioner's claim because Petitioner "failed to demonstrate a reasonable likelihood that the

10   [post-trial] motion would have succeeded."  (*Id.* at p.3).

11         On review, the appellate court, citing *Strickland* in addition to state cases for the

12   standard of review for resolving claims of ineffective assistance of counsel, denied relief.

13   (Answer, Exh. H). The appellate court recognized that "[w]e essentially resolved the

14   predicate for [Petitioner's] claim of ineffective assistance of counsel when we determined

15   on appeal that the evidence at trial had established all the elements of the charged offense of

16   second-degree burglary."  (*Id.* at p. 4).  The court also acknowledged Petitioner's contention

17   that the verdicts in his case were inconsistent and, thus, there was insufficient evidence to

18   support his conviction for burglary: "if the jury determined he had not stolen the victim's

19   property, he claims, then there was no basis on which it could have found he had broken into

20   the apartment intending to commit a theft....He contends trial counsel therefore performed

21   deficiently..." by not filing a post-trial motion arguing that the evidence was insufficient to

22   support the conviction. (*Id.*).  The appellate court agreed with the trial court's analysis, which

23   the appellate court quoted as follows:

24         "Here, the Petitioner has failed to demonstrate a reasonable likelihood that the
           motion [for new trial] would have succeeded.  To set aside a jury verdict for
25         insufficient evidence, it must clearly appear that upon no hypothesis whatever
           is there sufficient evidence to support the conclusion reached by the jury.  In
26         burglary cases like the case at hand, achieving success while attempting a theft
           is not required under A.R.S. §13-1507(A).  The statute defines burglary in the
27         second degree as 'entering or remaining unlawfully in or on a residential
           structure with the intent to commit any theft or felony therein.'  The crime of
28         burglary is complete when entrance to the structures is made with the requisite

criminal intent.  Burglary does not require the successful completion of the theft or underlying felony.  Acquittal of that underlying charge does not necessitate an acquittal on the separate and distinct charge of burglary....Therefore, a motion for a new trial based on lack of sufficient evidence would likely have been unsuccessful had it been filed by the Petitioner's trial counsel.  Accordingly, no prejudice has been shown and the Petitioner's trial counsel cannot be held to have been ineffective in failing to file a motion for a new trial based upon that argument."

(*Id.* at pp. 5-6 (*quoting* trial court's opinion attached to the Answer at Exh. F, p. 3) (citations omitted)).  The appellate court's decision is the last-reasoned state decision on this issue.

### 3.    Analysis

In *Strickland v. Washington*, 466 U.S. 668,687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. To establish that his trial counsel was ineffective under *Strickland*, a petitioner must show: (1) that his trial counsel's performance was deficient; and (2) that trial counsel's deficient performance prejudiced petitioner's defense. *Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998) (*citing Strickland*, 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious...that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-688. The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (*quoting Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of

1  attorney performance requires that every effort be made to eliminate the distorting effects of

2  hindsight, to reconstruct the circumstances of counsel's challenged conduct , and to evaluate

3  the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

4  Even where trial counsel's performance is deficient, Petitioner must also establish

5  prejudice in order to prevail on his ineffective assistance of counsel claim. To establish

6  prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's

7  unprofessional errors, the result of the proceeding would have been different. A reasonable

8  probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

9  Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does

10  not warrant setting aside the judgment of a criminal proceeding if the error had no effect on

11  the judgment." *Id.* at 691. "The likelihood of a different result must be substantial, not just

12  conceivable." *Harrington,* 562 U.S. at __, 131 S.Ct. at 792.   Further, because failure to

13  make the required showing of either deficient performance or prejudice defeats the claim, the

14  court need not address both factors where one is lacking. *Strickland,* 466 U.S. at 697-700.

15  It is well-established that a defendant has the ultimate authority to make fundamental

16  decisions regarding whether to plead guilty, waive a jury trial, testify in his or her own

17  behalf, or take an appeal. *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977)(Burger, C.J.

18  concurring). However:

19  [no decision of the Supreme Court] suggests,...that the indigent defendant has
20  a constitutional right to compel appointed counsel to press nonfrivolous points
    requested by the client, if counsel, as a matter of professional judgment,
21  decides not to present those points.

22  *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously

23  undermine[] the ability of counsel to present the client's case in accord with counsel's

24  professional evaluation." *Id.* The professional judgment and evaluation every defendant is

25  entitled to is an examination of the record, research of the law, and the marshaling of

26  arguments on behalf of the defendant. *Douglas v. California*, 372 U.S. 353, 358 (1963).

27  Additionally, under the AEDPA, the federal court's review of the state court's

28  decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689-699 (2002).

- 23 -

In order to merit habeas relief, therefore, Petitioner must make the additional showing that the state court's ruling rejecting an ineffective assistance of counsel claim constituted an unreasonable application of *Strickland*.   *See* 28 U.S.C. §2254(d)(1); *see also Cullen,* 563 U.S. __, 131 S.Ct. at 1403 (federal habeas court's review of state court's decision on ineffective assistance of counsel claim is "doubly deferential."); *Harrington,* 562 U.S. at __, 131 S.Ct. at 788 ("Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."); *West v. Schriro*, 2007 WL 4240859, *7 (D.Ariz. Nov. 29, 2007).

Here, the state court, in applying *Strickland,* applied the correct law to the issue. *See Dows v. Wood,* 211 F.3d 480, 484-85 (9th Cir. 2000) (*Strickland* "is considered in this circuit to be 'clearly established Federal law, as determined by the Supreme Court of the United States' for purposes of 28 U.S.C. § 2254(d) review.").

On the instant record, the state court's factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1).  Here, the evidence was that three partial fingerprints and a DNA match indicated that Petitioner had touched objects inside the victims' apartment in March 2005, while the victims  were away and without permission from the victims to be in the apartment. (Answer, Exh. A, at p. 5; *see also* Answer, Exh. N, pp. 64, 80, 113-114; Answer, Exh. O, p. 20). One of the victims testified that her bedroom had been ransacked by someone who had obviously gone through her belongings after having gained entry by breaking the bedroom window with a rock.  (Answer, Exh. A, p. 5; Answer, Exh. N, pp. 46-50; *see also* Answer, Exh. N, pp. 22, 39-40).  Among the items the burglar had disturbed was the victim's piggy bank that she kept on her desk.  (Answer, Exh. A, p. 5; Answer, Exh. N, pp. 53-54).  The victim testified that approximately $30.00 to $50.00 was missing from the piggy bank. (Answer, Exh. A, p. 5; Answer, Exh. N, pp. 53-54).  Three fingerprints found on the piggy bank proved to be Petitioner's.  (Answer, Exh. A, p. 5; Answer, Exh. N, pp. 113-114).

Under Arizona law, "the crime of burglary is complete when entrance to the structure

1    is made with the requisite criminal intent.   Burglary does not require the successful

2    completion of the underlying felony." *State v. Bottoni,* 131 Ariz. 574, 575, 645 P.2d 19, 20

3    (App. 1982) (citations omitted).   The "intent to commit theft or any felony can be shown by

4    circumstantial evidence.   An inference of the intent necessary for conviction of burglary may

5    be drawn when unauthorized entry into the premises is gained by force." *State v. Taylor,* 25

6    Ariz. App. 497, 499, 544 P.2d 714, 716 (App. 1976) (citations omitted) (holding there was

7    "ample evidence that the defendant entered the residence with intent to commit a theft or

8    some felony therein" where defendant gained unauthorized entry into private home by

9    throwing a rock through a glass acardia door and was found hiding in a closet).

10         On direct appeal, the state court found that "all the elements of the charged offense

11   [*i.e.,* second-degree burglary] were established by the evidence presented...." (Answer, Exh.

12   A, p. 5).   As the state appellate court pointed out during the PCR proceeding, such a finding

13   necessarily "resolved the predicate for [Petitioner's] claim of ineffective assistance of

14   counsel...."   (Answer, Exh. H, p.4).   Moreover, given the evidence presented at trial that

15   Petitioner made an unauthorized entry into the apartment by throwing a rock through a

16   window, rifled through one of the victim's belongings, and his fingerprints were found on

17   the piggy bank which had been moved and from which money was missing, it was not

18   unreasonable for the state court to find that Petitioner failed to establish prejudice for

19   counsel's alleged failure to file a post-trial motion arguing insufficient evidence to support

20   the verdict.   An attorney's failure to make a meritless objection or motion does not constitute

21   ineffective assistance of Counsel.   *See Jones,* 463 U.S. at 751; *Boag v. Raines,* 769 F.2d

22   1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute

23   ineffective assistance.").   Consequently, the state court's decision did not constitute an

24   unreasonable application of federal law as determined by the Supreme Court.   Nor did the

25   state court's proceeding result in a decision that was based on an unreasonable determination

26   of the facts in light of the evidence presented.   Petitioner's Ground III fails on the merits.

27   **III.   CONCLUSION**

28         Petitioner's Amended Petition is timely filed.   However, Petitioner's Grounds I and

- 25 -

III are precluded from federal review as procedurally defaulted. Additionally, Petitioner's Ground II lacks merit.

**IV.    RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss and deny Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 5) as follows:

(1)    Grounds I and III should be dismissed as procedurally defaulted; and

(2)    Ground II should be denied on the merits.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). If objections are filed, the parties should use the following case number: **CV 11-70-TUC-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 25th day of April, 2012.

_____
Héctor C. Estrada
United States Magistrate Judge